Case number 319-0054, Sue's Family Limited Partnership et al. Accounts by Christopher Sokin v. Otto Baum Company, Inc. et al. Appellees by William Holloway. Mr. Sokin? Thank you. Good morning. Good morning. May it please the court. My name is Christopher Sokin. Were you here when we discussed earlier that Justice Linton is unable to attend? Oh, I'm sorry. I was not, but... He will be participating, conferencing with us and participating by listening to your report. So you will have a panel of three. Thank you very much. Thank you for catching that. As I said, good morning. My name is Christopher Sokin. I represent the appellants in this matter. This case is about the collection of a judgment. More specifically, the overcollection of a judgment and the application or lack thereof of the collateral source rule. What happened in this case was there was a judgment entered against my client, as well as Methodist, as the purchaser and subsequent purchaser of a lot in Peoria County, where work was performed by Otto Baum to change the topography of the lot for a building that was eventually built on it. And after the judgment was entered, in which the trial court found that Methodist, by way of their president, had directed work that had been done on this lot, that Otto Baum was not paid for by sued or by Methodist, that a judgment should be entered for the value of that work in favor of Otto Baum. While the case was on appeal, which both my client and Methodist appealed, Methodist settled through their insurer attorney's title. They entered a settlement agreement, which is in the record. And that settlement agreement says that for the sum of $400,000, Methodist, through ATG, would settle their claim with Otto Baum. The settlement agreement is a rather lengthy document, as I'm sure you've seen. And the settlement agreement is very specific about what that $400,000 was paid for. The settlement agreement says it was paid for the reduction of the amounts that were owed on the judgments that were entered by the trial court. It specifically states that the allocations are between these two judgments and specifically states the amount that is left over to be paid by the one remaining defendant, which is my client, Sued Family Limited Partnership. Was that $167,000 or something like that? It was between the two judgments. One of them, they allocated somewhere around $166,000. And then the remainder of the $400,000 was applied to the other judgment. So it's difficult to calculate at this point, given the payments that were made in the statutory interest, how much in a given time was actually owed. But what was clear from the settlement agreement is that they agreed the $400,000 was applied to reduce those amounts that were owed, to reduce what Sued owed. And they even put in there that these separately written contract judgments were reduced by the $400,000 payment. So the question is, how did we get to this point where we're now arguing, did that $400,000 actually reduce the judgment or not? Because as I put in my briefing, there were numerous, perhaps dozens of times, in which AutoBomb admitted that it received the $400,000 as satisfaction on the judgment. They filed a fee petition in which they stated they collected it as satisfaction on the judgment, even going so far as to say that the only remaining amount owed was $877.40. They filed an affidavit from their attorney that said the same thing. They drafted an order that the trial court entered that said that the judgments were nearly fully satisfied, other than that $877. AutoBomb also said that they would go and collect that amount from a letter of credit that my clients had posted, and that once they collected that amount, they would file a notice of satisfaction of judgments, that they had collected everything that they owed. That didn't happen. The order was entered. AutoBomb got its fee petition award, which was roughly $80,000. So they were owed $80,000, roughly, plus the $877.40 they said was left over. They collected more than that, assigned their judgment to attorney's title, who then collected the remaining amount in the letter of credit of $196,000, claiming that the judgments were unsatisfied by $466,000. If you ask me where that $466,000 figure came from, I can't tell you. I have no idea. I know that they're claiming the $400,000 settlement payment that they paid did not satisfy that judgment. Where the other $66,000 came from, I don't know. So the issue for this court today is, at the time of that assignment from AutoBomb to ATG, was AutoBomb fully satisfied? Because if they were, that assignment is void under the Litwin decision, under all of the assignment decisions. You cannot assign something you do not have. And the S&A only gets what the S&R had. So there are arguments made, to your honor, by ATG about unjust enrichment or about subrogation. Those are all red herrings. There's never been any claim made by ATG or made by Methodist filed in this case for unjust enrichment or for subrogation. The sole right they had to take any money was through their interests stepping into the shoes of AutoBomb. They only got whatever rights AutoBomb got. And if you read AutoBomb's filings, if you read their fee petition, their fee affidavit, the order of the trial court, the statements made by AutoBomb's counsel in open court, all of them said, We collected $400,000 from the settlement agreement for Methodist and attorney's title. That reduced what was owed on the judgments, and the remaining amount is owed by sued. They collected it, and then they assigned it anyway. And in fact, if you read the settlement agreement, it specifically says, AutoBomb will assign the judgments to ATG only when and if it collects the entire balance due it on the judgments. That agreement, that sentence taken together, is void at the very start. You cannot collect the entire balance of the judgment and then assign it. The agreement says AutoBomb won't satisfy any excess on the judgment. That's an agreement not to steal something. There's no such thing as excess on a judgment. You get a million dollar judgment, you get to collect a million dollars plus the interest. You don't get to collect $1.2 million and collect $200,000 in excess because that's not what our legal system is. You get to be made whole, and that's it. So this agreement is essentially an illegal void agreement to assign a judgment after it's been fully satisfied. The trial court, in reaching the decision that it did, was that despite the settlement agreement, which is not mentioned in the trial court's order, despite the fee petition, which is not mentioned in the trial court's order, the fee affidavit, the order entered by the prior judge, the statements made in open court, despite all those things, none of which are mentioned in the order, this was a collateral source payment, that ATG's payment to AutoBomb was a collateral source to the judgments. And quite frankly, there's no scenario under Illinois law where that can be true. Because the Illinois Supreme Court stated in Wills v. Foster that a collateral source is not when a defendant or someone on the defendant's behalf makes a payment to the plaintiff. And as much as Methodist wants to object here that they weren't a, quote, judgment better, they were a defendant. There was a judgment entered against them, and AutoBomb got to choose. They could foreclose on Methodist's lot to get their money. They could go after Sue to get their money. And instead, they chose to settle to avoid that foreclosure and pay $400,000 to do so. And under the Mechanics' Link foreclosure laws, when a judicial foreclosure sale happens, the statute says the money is applied to the judgment, and the judgment stands satisfied in the amount of the sale. So had there been a sale of Methodist property, the amount of money that went to AutoBomb would have reduced what was owed on the judgments. Yet ATG now argues that their settlement to avoid that outcome was not satisfaction but a collateral source. How can that be possible? How can they settle a claim that would have been satisfaction and then turn around and say it's not satisfaction? I don't know. They don't explain that. Well, I have to say I can't figure out how Methodist got on the hook at all. Methodist got on the hook because what occurred is the lots were being worked on to create this subdivision. Sue, prior to some of the work being started, sold the lot to Methodist as is. And prior to filing their Mechanics' Link. Correct. And AutoBomb was found to have worked with Methodist. Methodist President Michael Bryant was found to have directed AutoBomb to continue to do work on the lot after it was sold as is. So that's the contract that's being alleged? There were no contracts. The Court found there were oral contracts. There were no actual written contracts. So the trial court said, well, there's no written contract. And even though the liens say there's a written contract, they found oral contracts existed, and that's how they enforced the Mechanics' Link. Both Methodist and Sue in the trial court disputed that and said that you can't have a Mechanics' Link that says there's a written contract when there's not. But the trial court ruled the other way. And now Methodist wants to change their position in this case and say that, well, now you owe us all the money, even though they never filed anything at that time. So the reason Methodist is on the hook is because the trial court found they were. Methodist never filed anything against Sue to say, no, no, no, you should have to pay. And the trial court set a foreclosure judgment against the subsequent purchasers just as good as it's against the original. And is that the same situation with Congress? Virtually, yes. So Methodist could have tried to file something against Sue and say, no, no, no, you should be responsible for this Mechanics' Link. The issues are different because that was the other portion of the case. It was about a roadway that was built through the lots, and they all touched it. Whereas in this case, Sue had already sold the lot to Methodist. Methodist decided they're going to keep having Autobahn do the work, and nobody paid Autobahn. My client didn't pay because they said, we already sold this lot to you as is. We didn't. Why would we pay for any extra work? Methodist didn't pay for whatever reason. And the trial court found that there was no finding. There was under-blooded that Methodist ordered the work be done and didn't pay. So that's how we got to this point. But the legal conclusion of is this a collateral source or not, the trial court could have only reached it by ignoring all of this evidence. These are judicially binding admissions by the judgment creditor, by Autobahn, prior to the assignment saying, we already got this money. We already got the $400,000. It reduces what's left. It reduces what Sue has to pay. When ATG stepped into Autobahn's shoes, they're bound by all these prior admissions. They are Autobahn for all intended purposes. And they cannot suddenly say, oh, yeah, the $400,000 that Autobahn admitted they got that the prior trial court judge wrote in an order they already got that said it reduced the judgment. They can't suddenly come in here and say, well, you know what? No, we don't agree with that. We think our settlement, you should have to pay for it. And what actually happened is, after this money was taken, the other companion case to the original that was filed in 2017, there was a suit saying, you've got to give us our money back. This judgment was satisfied. And ATG, for the first time in the 2017 case, tried to file those counterclaims they never filed in the original suit and said, no, you're responsible for this settlement. You were responsible for this mechanics lien suit. And the trial court correctly dismissed them all and raised judicata grounds. You can't wait and have two bites at the different side of the apple. In the first case, you can't spend five years arguing these mechanics liens are invalid. Never file any counterclaim. And then when the case ends, file counterclaims against suits saying, oh, you were responsible for that. All that stuff that we just had that eight-week trial over, we're going to relitigate all that because you should have been responsible for it. And the trial court said, no way. You had to do that in the original case. You don't get to do that. And that's really the issue here, is that Methodist did not avail itself of the opportunity that it had to file those counterclaims. Unfortunately, just as unfortunate as it was for suit, because we argued the same thing, was that we lost. And then all of a sudden, their title insurer said, well, we lost. What are we going to do? Well, we're going to try to sue SFLP now. And the trial court said, you can't. So instead, we've got this scheme whereby AutoBomb collects the entire amount of its judgment and then they try to assign it to ATG so that in a roundabout manner, ATG can try to enforce some contribution on suit to pay for the settlement. Something they cannot do. There are multiple cases, one of which is the Marks decision, where this exact scenario occurred, where one of the defendants decided, why should I have to pay this whole settlement? What we're going to do is we'll settle, we'll buy up the liability, and then we're going to go after the other party and say, you owe us this money. And the court said, you can't do that. That's not what contribution is. You cannot take a fictitious and fraudulent assignment in the name of a third party to try to enforce contribution. You've got to actually make a claim in the case. It's this... Thank you. It's the same issue with this unjust enrichment and subrogation theory. They never made the claims. They just say that they have them. Oh, this is unjust enrichment. No unjust enrichment claim was filed. Oh, you've got to contribute to this settlement. You should have paid our settlement. No contribution claim was filed. No counterclaims were filed. No subrogation claim was filed. They just thought they could stand in Audubon's shoes and get this money. And they can't because they're only entitled to get what Audubon could get. And all that Audubon could get was the value of the work it performed. It got $400,000 of it from ATG and Methodist. It got the rest from sued. And that's it. That's over. At that point, there is no more judgment. The judgment is satisfied. Audubon has no more rights. And this work was ultimately close to a million dollars. 900 and... Yes, when you add up the interest, Audubon said in the 2017 case, they filed a motion for judgment of the pleadings in which they alleged they had collected 1.2 something million dollars in satisfaction of their judgments which included the $400,000. I believe the original judgments totaled together somewhere around $800,000, $900,000. So they ended up collecting $1.2 million in satisfaction of those two judgments. Thank you. Thank you. Mr. Holloway? Good morning. The police court and counsel Bill Holloway on behalf of Attorney's Title Guarantee Fund ATG for short Audubon Company which I often refer to as OBCI and Methodist Services There are two cases that are the subject of the appeal before you namely the 2009 case and the 2017 case. In both cases a sub claims that it fully satisfied the judgments that were entered against it in the 2009 case. Not once and we listened very carefully but not once in counsel's argument a conclusive minute ago that he mentioned the governing statute. The Code of Civil Procedure Section 12-183 A and B sets the rule as to when a judgment debtor is entitled to a release of judgments and as a matter of fact the amended petition for release of judgments was denied by Judge Garner The first paragraph of their amended petition the fourth line points out that their petition is based on this statute If the court will indulge me I will just read a few lines from it This is from Subpart A Subpart B has almost exactly the same language I'm not going to read the whole part although it's pretty short but it starts this way A Every judgment creditor his or her assigning of record ATG is the assigning of record as of March 3rd 2017 that's when the assignment occurred or other legal representative having received full satisfaction or payment of all such sums of money as are really due to him or her from the judgment debtor and then it goes on but that's the that's the condition to begin with if you're a judgment debtor and you want a relief actually not only was it not mentioned by counsel in his argument in his appellant appellant's brief that concerns the 2017 case and his reply brief he never once refers to this statute but that's not all the since this was a summary judgment oh I won't further to point out that I respectfully submit the statute is itself a statutory statement of the common law collateral source rule and we'll get more into that I want to point out that there's no genuine issue of material fact that said never paid for never satisfied the money judgments that were entered against him in the 2009 cases never satisfied them in full they don't claim that they paid that again you've heard his argument Sud doesn't claim that it paid he's looking for credit and we will get to that Sud doesn't claim that anyone paid on behalf of Sud but they do refer to ATG and $400,000 that it paid to make its insured method of services title as insured namely free of any lien of judgment now if the opponent can't get a right to a release because it didn't satisfy the judgment by its own accounting it is a little more than $400,000 short of full as of March 3rd, 2017 we have given the appellant our accounting and our pleadings which shows that I think it was $466,000 some dollars short on that date counsel referred to a case called Wills vs. Foster and in his brief it was a 2008 O.N.I. Supreme Court case in his brief he argued and he argued in his argument this morning that that case gives a judgment debtor, money judgment debtor such as Salk a credit for any money paid by any defendant paid by any insurance company on behalf of any defendant well if that were true it would pretty much wipe out the collateral source rule I respectfully submit that counsel's interpretation of that case is erroneous the Wills case is quite a long case, very interesting case actually and it cites Arthur vs. Kator C-A-T-O-U-R another case from our Supreme Court it cites that case no less than 31 times affirmatively and that is a very detailed case on what is and what is not a collateral source and I will read you from this is from the Wills on page 399 of that opinion and here's where they state the collateral source rule pretty easy benefits received by an injured party from a source wholly independent of and collateral to the tortfeasor will not diminish damages otherwise recoverable from the tortfeasor well the damage the money came from ATG on behalf of Methodist Methodist who of course was not a tortfeasor who was not a wrongdoer in any sense of the word um but the statute as part of the code of civil procedure doesn't say well it only applies to money judgments against tortfeasors it's money judgments of any kind period, that's the statute requires no elaboration there's no genuine issue of material fact the $400,000 was a collateral source it did not come from SUD, it was not paid on behalf of SUD it was not paid to reduce the SUD judgment indeed a recovery by SUD of money paid by ATG to defend and make title insured for a Methodist services would be unjust enrichment I respectfully submit to the court and I must say to the man on the street if you told him what was going on had SUD paid its contractor OBCI for the work that was done there never would have been a mechanics lien suit by OBCI against SUD or against Commerce Bank one of the buyers of those lots or Methodist Services as it was Methodist Services that purchased that property without knowing that SUD was not paying its contractor purchased it when it was in peril if SUD did not pay the contractor of being sucked into a mechanics lien suit and that's exactly what happened $400,000 was paid to make title as insured how do you know that? it's spelled out in the agreement kind of the centerpiece of the SUD argument and if I have time I will get to that in a moment OBCI and Methodist are both victims of SUD how can anyone deny that? your rule 23 opinion in this case by the way at paragraph 23 spells out who the money judgments are against you won't find Methodist Services listed Methodist Services was only brought in for a lien against their property period I mean in the argument I did hear that oh well if SUD didn't pay then OBCI would actually close on its lien and then it would get the money out of Methodist Services and that would help reduce what was owed on the children oh boy I mean is that unjust enrichment? that's some argument rule 23 at paragraph 50 spells out that SUD breached its contract with OBCI without just cause or right so this wasn't just a breach oh my gosh did we do that? you know the trial court found that I respectfully submit that this court found it and it's law of the case both your everything in that rule 23 opinion now the agreement this is the second time this agreement is before the court the agreement was attached by Mr. Wentworth to his brief it was exhibit A I think to his two minutes thank you it was attached to his brief if you read that the whole document I think it's pretty clear that you're referring to the settlement agreement yes I am thank you let me go to judicial admissions that's the main body of counsel's argument page 6 of the SUD reply brief on appeal in this case they argue the issue of whether OBCI money judgments were paid were fully satisfied they were fully satisfied they just weren't fully satisfied with SUD money they're only fully satisfied if SUD gets credit for $400,000 ATG paid on behalf of Methodist there's no judicial admission that even touches on the statute I also want to in SUD's own brief I found the case that is most interesting they define judicial admissions are not evidence all a judicial admission does is withdraw admitted facts from contention you know all of this argument about judicial admissions and in our I'll have to rely on and do rely on my brief for addressing the particular alleged judicial admissions but I think just coming to the chase what what is a judicial admission if it doesn't deal with the statute if it doesn't deal with subpart A or subpart B to show that somehow a real fact that SUD paid but they admit they didn't pay it they admit they didn't pay in full thank you your honors unless you have a question I'll take my seat thank you Mr. Holloway pleasure being here in this courthouse thank you we feel the same way pardon? we feel the same way thank you Mr. Sokin any rebuttal the issue that counsel has with the fact that the foreclosure would have satisfied the judgment isn't anything I invented it's something called 735 ILCS 5 slash 15 dash 1508F it's the judicial sales statute it says when you sell a piece of property the funds go to pay off the amount that's owed that's what happens in a mechanics lien the mechanic says I'm owed this money and in this case autobahn did a bunch of work that benefitted Methodist lot a bunch of work that SUD never should have paid for because they sold it as is so Methodist gets their lot improved never pays anything and that property could have gone to sale at which point it would have gone to pay off the work that autobahn did and now they're going to stand here and tell you that oh no that was a collateral source we didn't do anything wrong I just heard counsel say they never said anything that their payment was going to reduce what was owed on the judgments well you can look on page A11 of the appendix which is their settlement agreement and I'd just like to read a little bit of it the parties acknowledge and agree that with respect to the judgments entered on count one of the first amendment complaint in each respective case as to the roadway case the sum of 305,248.22 of the 460,463.26 judgment in favor of autobahn and against SUD family limited partnership remains unpaid now on what planet can you draft a settlement agreement that way that specifically says here's how much it reduced the judgment by and then turn around and appellate court and say nah it was really a collateral source how can you do that it gets worse as you keep reading because then it says to the extent applicable to the SUD contract judgments the one they were just saying we're solely responsible for consistent with the allocation of the payment to the judgments the parties here to agree that for the SUD contract judgments 161,934.78 shall be allocated to the roadway case and 238,065.22 shall be allocated to the lot 5 case so they filed that agreement in this court told the trial court repeatedly that this meant that the judgment was reduced and now they're in here saying they didn't really do that they still owed all this money they can't do that they can't do that you can't go in one courtroom and say the complete opposite to the one you go into later that's what judicial estoppel is for because of what they're saying is true there are about 12 maybe more episodes of perjury that occurred in the 09 cases where Otto Baum admitted that all the money they got from Methodist and from ATG satisfied the judgment counsel was complaining that there's nothing that was actually admitted to that established anything having to do with what was owed except if you look on the appendix page 104, there's an attachment that they admitted was accurate, it is a calculation of everything that Otto Baum received in payment of the judgment it looks like this every single payment down to the penny, every portion of interest, they admitted this is true that $155,215 amount of judgment for lots 2 and 5 paid by Methodist why would Otto Baum say that they got paid by Methodist to reduce the judgment if it was a collateral source they wouldn't why would Methodist pay post judgment interest if it was a collateral source they wouldn't so here we are having Otto Baum and a document they admitted was accurate at the bottom it says total owed to Otto Baum through March 3rd, 2017 and paid by SuedFam Delimited Partnership on second draw on letter of credit March 3rd, 2017 and it's the same amount the amount Otto Baum said was owed is the amount they drew before they assigned it and yet now they're going to say oh no, all that money was still owed and the way they're going to do it is by trying to claim that this statute means they're not a judgment debtor of course they're a judgment debtor Otto Baum could have chosen to sue them only that's what the mechanic's lien statute is for they could have sued the subsequent purchaser only and foreclosed on Methodist building to get the entirety of the money that they were owed and now they're going to say well we're not really a judgment debtor of course they are, they're a co-debtor it's like any other case, auto accident which there are multiple defendants the plaintiff only gets one recovery they don't get to get an extra money if there was never any assignment to ATG Otto Baum was done collecting any money they admitted they got all of their money ATG stands in the shoes of Otto Baum they can only collect what Otto Baum could have collected and that is nothing Otto Baum admitted in open court over and over and over they got all their money they can't assign it to ATG to fraudulently enforce a contribution time is up counsel thank you we thank both of you for your arguments this morning we will in conjunction with Justice Litton take the matter under advisement and we'll issue a written decision as quickly as possible